**FILED**
U.S. District Court
District of Kansas

DEC 1 9 2022

Clerk, U.S. District Court
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Daniel A. Martinez, individually,                    )
Inpropria persona                                    )
                                                     )
                        Plaintiff,                   )
                                                     )
            vs.                                      )          Case No.  2:22-cv-2524-JAR-KGG
                                                     )
United States, Department Of Veteran Affairs,        )
VA. Medical Director, Candance Ifabiyi               )
VA. Chief of Dental Dr. Jean R. Elysée,              )
VA. Community Care Jessica R. Classen,               )
VA Community Care Kristen M. Roth,                   )
VA Cathleen Phillips and others                      )
known/unknown government actors,                     )
                        Defendants                   )
                                                     )

PURSUANT TO 42 U.S.C § 1985 (2), (3)

**COMPLAINT**

1.      COMES NOW plaintiff, Daniel A. Martinez, individually Inpropria persona, and

in the interest of disabled veterans, file this complaint against the above defendants pursuant to

42 U.S. Code §1985 (2) and (3) and Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, for

the statute interpretation of 42 U.S.C. 1985 (2), (3) and its equitable powers for violation of

Martinez's civil rights by defendant's use of force, intimidation, and threats by retaliating against

Martinez for so having attended as a person in federal court against VA employees

conduct at the Robert J. Dole Medical Center in Wichita Kansas under Case # 6:21-CV-1029-

JAR_KGG and in state court, case # 22-CV-554. The VA defendants' actions were extremely

outrageous, and outside the VA discretionary authorization regarding policy consideration and

1

consequently, outside their scope of employment.  As a result of such outrageous conduct by defendants, Martinez extremely suffered an exacerbation of emotional distress which was a-symptomatic and  as a result of defendants' conduct, became symptomatic as Martinez is 100% disabled with PTSD which all defendants were aware of when establishing a well thought- out conspiracy  to include co-conspirators to retaliate  against Martinez by force, intimidation and threats against Martinez for the reason stated above.

1a.    Defendants' do not have an Attorney General Certification to prove defendants were acting within their scope of employment.   Defendants' malicious attacks continue, and Martinez does not see an end to such attacks unless the courts intervene.

1b.    The VA is incapable of  regulating itself which is evidenced by over 400,000 veterans who have committed suicide as a result of VA employees retaliating against veterans who speak out in protest against bad treatment for the past 20 years and before. ( Inspector General Report  ( see para 12).

## A. PARTIES

2.    Plaintiff,  Daniel  A. Martinez, is an individual representing self, Inpropria persona, a  residence located at  2400 N. Belmont  Wichita Kansas 67220 and can receive service at P.O. Box 8873, Wichita Kansas 67208.

3.    Defendant, The United States can be served  on  the United States  attorney for the District of Kansas at, 1200 Epic Center  301 N. Main  St. Wichita, Kansas 67202  (316 ) 269-6481 and register certified mail  to Attorney General of the United States, Merrick B. Garland at Pennsylvania Ave, N.W. Ste. 7141  Washington DC, 20530  ( 202)  353-1555.

4.       Defendant,  U S. Department of Veteran Affairs,* is a government entity with a
principal Office located in Washington, D.C. The Department of Veteran Affairs may be served
by and through the Secretary, Denis R. McDonough at his principal place of business, the
Department of Veteran  Affairs, 810 Vermont Ave NW, Washington DC. 20420.

4.       Defendant Director Candance Ifabiyi, was appointed as the CEO/Director of the
Robert J.  Dole VA Medical Center, in Wichita, Kansas on August 16, 2020, and can receive
personal service through the Human  Resource Department in Wichita Kansas, at 5500 East
Kellogg Drive, Wichita Kansas 67218, Phone  1 316 – 685-2221; extension 53625 or, pursuant
to Fed. R. P.4  ( e ) (1).

5.       Defendant, Dr. Jean Elysée, chief of Dental at VA hospital worked as a dentist in the
Military and had just recently retired as a general dentist before accepting the chief of dental
position at the Wichita VA hospital on or about October 2021.  Dr. Jean Elysée is not a licensed
periodontist. Dr. Elysée can receive personal service through the Human  Resource Department
in Wichita Kansas, at 5500 East  Kellogg Drive, Wichita Kansas 67218, Phone  1 316 – 685-
2221; extension 53625.

6.       Defendant, Jessica R. Clasen, is a manager at Wichita Kansas VA Community care and
can receive personal service through the Human  Resource Department in Wichita Kansas, at
5500 East  Kellogg Drive, Wichita Kansas 67218, Phone  1 316 – 685-2221; extension 53625.

7.       Defendant, Cathleen Phillips, VA employee  Dental clerk/assistant works as the front
desk scheduler at Dr. Elysée's Office,  Cathleen Phillips can receive personal service through the
Human  Resource Department in Wichita Kansas, at 5500 East  Kellogg Drive, Wichita Kansas
67218, Phone  1 316 – 685-2221; extension 53625.

8.       Defendant, Kristen M. Roth, VA employee works at community care as an employee.

3

She is supervised by Jessica Classen and schedules veterans' appointments with Third-party periodontists and can receive personal service through the Human Resource Department in Wichita Kansas, at 5500 East Kellogg Drive, Wichita Kansas 67218, Phone 1 316 – 685-2221, extension 53625.

## B. JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because the claims in this action arising under the laws of the United States, including 42 U.S.C. § 1985(2), (3).

10. The Court is authorized to award the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and its equitable powers and damages under, 28 U.S.C. 2675.

11. The venue is proper in this district court pursuant to 28 U.S.C. § 1391(b)(2) and U.S. C 1402 (b) 2 because it is the judicial district in which a substantial part of the events or omissions giving rise to Martinez's claim occurred.

11a. This court has jurisdiction to award damages under 28 U.S.C. § 1346 ( b) (1)

## C FACTUAL ALLEGATIONS

12 This lawsuit seeks accountability for unlawful action knowingly undertaken by the Department of Veteran Affairs Managers, Supervisors, Doctors, Nurses, and staff Employees who conspire and continue to obstruct a civil proceeding by intimidating and retaliating against disabled Veterans who speak out against the Department of Veteran Affairs for the unfair treatment of Disabled Veterans. It is well known over 400,000 veterans nationwide have

committed suicide because they could not receive proper treatment.  In essence, veterans just give up begging. (inspector general report since 1992 – 2022. Even in VA parking lots);

https://www.militarytimes.com/news/transition/2019/02/08/veterans-are-committing-suicide-in-va-parking-lots-report/

13.     Concerned about the obstruction of treatment to punish Martinez for speaking out against  Dr. Elysée chief of Dental and others, Martinez, to not become a casualty victim and to protect his interest filed a Federal lawsuit on January 29, 2021, Case # 6:21-CV-1029-JAR_KGG. On May 14, 2021, Martinez Dismissed the lawsuit without prejudice and agreed to file an FTCA. Following the dismissal, Martinez returned to the VA Medical Center to seek treatment and apologized to Dr. Elysée in front of his staff,  thinking he would receive better treatment without needing to file an FTCA.  That did not happen. In fact, the news spread throughout the entire  VA Medical Center that Martinez had sued the newly appointed VA director and the newly appointed chief of Dental along with other medical doctors.

14.     The action engaged by conspirator Dr. Elysée, Director Candance Ifabiyi,  Jessica Clasen and other  co-conspirators against Martinez was to double- down and conspired to inflict more pain and suffering by intimidating Martinez to leave the VA hospital benefits program for veterans with a 100% disability rating. In a nutshell,  The VA sent a message to other veterans not to follow Martinez's action or they too will be targeted, and medical treatment will be intentionally deprived. Martinez had no choice but to protect himself and his state of mind and file an FTCA cause of action for retaliation pursuant to 42, U.S. Code. § 1985 (2) and (3).

14a.    FTCA did not recognize adjudicating 42, U.S. Code. § 1985 (2), (3) denying the claim. Martinez exhausted his administrative remedy and retaliatory and intimidating tactics continue. Exhibit  A

15.     The targeting campaign against Martinez violated federal civil rights laws that have long  protected United States citizens including disabled veterans from intimidation, retaliation, and threats.  Specifically, defendants' actions violated several provisions of the Ku Klux Klan act of 1871, codified at 42, U.S. Code § 1985 (2) and (3).

16.     Section 1985 was enacted to provide tools to ensure the effective functioning of the Federal Government. Congress recognized that attempts to use threats and intimidation to impede U.S. Citizens and the court from carrying out their responsibility harm not only those targeted; but the very capacity of our democracy to function, thus the statute makes it unlawful to conspire to retaliate against citizens of the United States to include, but not limited to,  disabled veterans who file and having so attended federal/state court against government VA employees.

17.     In this case, the threat to our democracy came from the conspiracy among VA government  employees and some outside third-party providers Martinez sued in state court, for their participation in the conspiracy against Martinez, case # 22-CV-554.

18.     VA employees waged a targeted campaign against Martinez outside their discretionary scope of employment for  Martinez so having exercised his rights to file a cause of action for their mistreatment under case # 6:21-CV-1029- JAR_KGG with such coordination precision should come as no surprise.

(a)  It is impossible that there would not be a high degree of coordination among VA employees to conspire to protect their jobs and careers stemming from Martinez's initial lawsuit. Such actions of retaliation, intimidation, and threats were waged against Martinez for Martinez having filed and attended legal proceedings against the defendants.

**19.     intimidation** (a type of conduct often carried out through the use of speech) and threat (a type of conduct nearly always carried out through the use of speech), and both Klan Act

provisions (§§ 1985(2) and 1985(3)) additionally require proof of conspiracy—again, conduct effectuated through speech, using the mechanism of a conspiratorial agreement. Such conspiracies of intimidation, threats, and retaliation committed by defendants are Unlawful and unethical conduct, (2) Circumventing a rule of conduct by conspiring by, and through the action of others, (3) Retaliating against veterans to create a hostile environment where veterans, in protest, give up begging for proper treatment, leaving the veteran's system, or by committing suicide.

https://www.militarytimes.com/news/transition/2019/02/08/veterans-are-committing-suicide-in-va-parking-lots-report/

20.     Defendants employed an old playbook with an agreed-upon unlawful purpose of intimidation and obstruction of justice. That purpose was made explicit from the start after Martinez filed his lawsuit and dismissed it without prejudice under Case # 6:21-CV-1029 -JAR_ KGG.

21.     Whatever one thinks of the merit of the VA hospital personally attacking Martinez a (person) having participated in a legal proceeding against bad actors, cannot be dismissed as business as usual and cannot be tolerated in a nation built on the rule of law.

21.     This complaint seeks redress for the harm Martinez suffered as a result of the agreed unlawful conspiracy against the defendant's ongoing retaliation for nearly a year, pursuant to 42, U.S.C. § 1985 (2) and (3). Such injuries are infliction exacerbating emotional distress, knowing, or having reason to know Martinez is 100% disabled with PTSD; (2) Intentional infliction of prolonged pain and suffering as a means of retaliation against Martinez for filing a lawsuit. (3) Depriving, obstructing, and conspiring with others to deny Martinez's legal rights affording dental implants to veterans with a 100% disability rating; (4) Legal injury violating

7

Martinez's civil rights after Martinez, a (person) filed, and attended a court action against defendants under Case # 6:21-CV-1029-JAR_KGG).

23. It is impossible that there would not be a high degree of coordination among VA employees to conspire to protect their jobs and careers stemming from Martinez's initial lawsuit. Most VA employees have less than 5 years at the Wichita VA hospital in Wichita Kansas.

## Background

24. Martinez has been with the Wichita VA hospital since 1978 as a patient and worked as an assistant in the radiology and cardiology department as a college student. As a professional, Martinez had been employed as a disability benefit rater for the VBA. On Christmas Holidays, Martinez would stroll the hallways entertaining Veterans hospitalized as well as staff, playing Christmas songs with his mariachi band. In the past 6 years, Martinez has seen a change in the staff's commitment to disabled veterans; most notably from 2016-2022. Martinez became a victim of that malicious ideology to deny veterans of their rights when they speak out and now knows what veterans, face, "hopelessness!".

25. There is no record that 42 U.S. Code § 1985(2),(3) has ever been challenged by a VA patient, against VA hospital employees and management. This statute is the right remedy to put a stop to the Wichita VA from force, intimidation, or threats by way of retaliating against veterans who have filed lawsuits and attended court against VA employees who believe they have sovereign immunity and cannot be touched in a court of law.

26. An infamous quote by Attorney General Merrick B. Garland, "No one is above the law, not even the President of the United States."

8

## D. FACTS PERTAINING TO THE PARTIES

27. On or about December 15, 2021, and after dismissing without prejudice federal Case # 6:21-CV- 1029-JAR_KGG, Martinez returned to the VA Medical Center to seek dental treatment and apologized to Dr. Elysée in front of his staff, for filing and having attended a federal lawsuit against Dr. Elysée along with other doctors. Martinez thought he would receive better treatment without the need to file an FTCA.

28. Dr. Elysée accepted Martinez's apology, examined Martinez, and confirmed Martinez had bleeding gums and conveyed he would refer Martinez back to Dr. Anderson to reinstate treatment that was taken away from Martinez by his predecessor, Dr. Carr in 2019, and that he would make the referral at once. Dr. Elysée mentioned while accepting Martinez's apology, " you know, in my country, patients can't file lawsuits against doctors". At that time Martinez did not think anything about Dr. Elysée's acceptance comment.

29. **In support**, Dr. Anderson's medical records verify she treated Martinez in 2019 for gum disease and the VA at community care stopped ongoing treatment. Dr. Elysée's statement can be verified by his assistant Marcus making the referral at once.

30. Martinez waited from December 15, 2021, to the middle of January 2022. Nearly 45 days had passed notably, and Martinez never received a call or referral to Dr. Anderson. Martinez went back to Dr. Elysée's office to inquire about the lengthy delay and spoke with Cathleen Phillips, front desk attendant/scheduler. Cathleen looked at her computer stating that no request was ever made by Dr. Elysée and that Dr. Elysée was "too busy." Nothing else was offered.

31. At that time, Martinez, knew Dr. Elysée, in retaliation, was paying Martinez back for filing a lawsuit against Dr. Elysée by intentionally depriving Martinez of dental treatment for so having filed and attended court against Dr. Elysée. Dr. Elysée started the conspiracy campaign of intimidation and other defendants by choice became a party to that conspiracy.

9

32.     As a result of Dr. Elysée and his co-conspirator Cathleen Phillips's outrageous conduct, Martinez left the VA dental office with extreme feelings of hopelessness, and experienced panic, and anxiety attacks due to the exacerbation of Martinez's PTSD which he sustained in the military.

    a.     Dr. Elysée knew Martinez had 100% PTSD as Martinez told him during Martinez's apology. VA medical records show Martinez was under the care of Dr. Brewer a VA psychiatrist MD for 10 years.

    b.     Dr. Elysée knew exactly what he was doing and used Martinez's disability conditions to retaliate against Martinez by intimidating tactics as a payback.

    c.     Dr. Elysée just retired from the military before taking the position of chief of Dental and knows the military playbook of retaliation and intimidation which he used against Martinez and knew his intimidating tactics would cause bodily harm to Martinez.

    d.     Dr. Elysée did not have discretionary authority as a dentist to intimidate Martinez as a means of retaliation. The VA does not have policy guidelines for Doctors' discretion to intimidate VA patients. Dr. Elysée and his co-conspirator Cathleen Phillips's actions conspired to injure Martinez with pain and suffering by willfully depriving dental care. That extremely outrageous conduct caused exacerbation of intentional infliction of emotional distress to harm Martinez.

33.     On Feb. 2, 2022, Martinez filed a federal FTCA claim against Dr. Elysée, and VA Director Candance Ifadiyi; later added Jessica R Clasen, Community care (CC) Supervisor/manager, Kristen M. Roth at (CC), and Cathleen Phillips, front desk scheduler as co-Conspirators under the FTCA claim pursuant to 42 U.S.C. § 1985 (2) (3). Date of loss Jan. 31, 2022. FTCA did not adjudicate a cause of action under 42 U.S.C § 1985 (2) (3) and before Martinez's investigation had been concluded, prematurely denied an FTCA action. Martinez has exhausted his administrative obligation and now turns to the federal courts. Exhibits A, B.

34.    Martinez has a **causal connection** with all parties, in person, on the phone, and through correspondence. Director Candance Ifadiyi could have stopped the conspiracy as all communication with defendants were copied to her office with specificity. Because Director Candance Ifabiyi was copied on all allegations, Director Ifabiyi could have stopped the ongoing conspiracy of force, intimidation, and threats against Martinez but made a conscious decision not to and continued to back and join the conspiracy campaign against Martinez as Martinez too named VA Director Candance Ifabiyi in the previous lawsuit pursuant to Case # 6:21-CV-1029-JAR_KGG, and directly or indirectly deprived Martinez of his equal protection of Martinez's civil rights under 42 U.S.C. 1985 (2), (3).

a.    Director Candance Ifabiyi has served in the army reserves and knows intimidating tactics to control military personnel without consequences.

   b.    Director Candance has discretionary authority to assure the VA hospital is functioning properly and has the authority to discipline those who go against VA policy guidelines.

c.    Director Candance Ifabiyi breached that authority for her own purpose to retaliate against Martinez for filing a lawsuit and having so attended court against director Ifabiyi.

d.    Director Ifabiyi knew Martinez was being retaliated against by way of force, Intimidation, and threats against Martinez and willfully refused to step in and stop the retaliation.

e.    As a direct result of her inaction to stop the retaliation, Director Ifabiyi became a party and conspired with the named defendants to intentionally cause bodily harm to Martinez by approving intimidating tactics against Martinez which is outrageous conduct.

f.    That outrageous conduct caused direct or indirect pain and suffering and infliction of emotional distress to Martinez.

35.    It is impossible that there would not be a high degree of coordination among VA employees to conspire to protect their jobs and careers stemming from Martinez's initial lawsuit.

11

Especially after the entire VA Hospital discovered Martinez filed a lawsuit against a newly appointed VA Director, Candance Ifabiyi. Even the secretary of Veteran Affairs Denis R. Mc Donough came to offer support to Director Ifabiyi's appointment after the lawsuit was filed.

36.     On Feb. 8, 2022, at 10:30 am Martinez received a return call from VA Facility Community Care Office. Martinez spoke with Jessica Clasen, Community Care Supervisor/ Manager at Robert J Dole Medical Center in Wichita, Kansas herein refers to as (VA). Jessica replied to a message Martinez left with Kristen, M. Roth. Martinez was concerned with procedures/ policy guidelines if Community Care (CC) personnel determines if medical treatment is necessary and reasonable similar to insurance companies when determining cost reimbursement.

37.     After Martinez presented his educational background to Jessica, Jessica stated "If more care is needed that was not pre-authorized (CC) would send a report to the attention of Dr. Elysée and Dr. Elysée would make that determination or would schedule a reevaluation to examine Martinez. Jessica at (CC) reiterated that (CC) does not decide what is necessary and reasonable treatment. [ That statement was learned to be false].

38.     In September of 2022 received a note from Dr. Elysée stating he does not authorize treatment once a patient is referred to Community care. This was also confirmed by Dr. Washburn, Martinez's primary care physician at the VA Medical Center. The truth came about once Martinez sued Dr. Shanthakumar third-party periodontist at implant Perio Center of Kansas as a co-conspirator and subpoenaed Jessica Clasen, Cathleen Phillips, and Kristen Roth, VA employees to testify as a witness pursuant to case # 22CV554. ( ref. 33,38, 40-48)

39.     JESSICA R. CLASEN stated, (CC) uses medical providers that are in-network and are closest to the veteran's home. Jessica M. Clasen, supervisor to, Kristen Roth, knew Dr. Anderson a periodontist was in the network provider since 2019 and preauthorized treatment for Martinez in 2019. During that conversation, Martinez conveyed to Jessica that Martinez wanted to go back to Dr. Anderson if she is still in the network. Jessica stated okay.

40.     On about Feb 15, 2022,  Community Care ( CC)  referred  Martinez to Dr. Shanthakumar

at Implant Perio Center of Kansas in Wichita Kansas.  Martinez assumed Dr. Anderson was no

longer in the network and agreed to see Dr. Shanthakumar; Kristen Roth, co-conspirator,  made

that referral. Martinez kept that appointment as (Dr. Shanthakumar was a third-party in-network

periodontist for the (VA).

41      During the examination, the consultation did not go well as Dr. Shanthakumar continued

to attack Martinez for asking medical questions about his recommendation of pulling two

perfectly sound teeth and recommending dental surgery without an explanation for the necessity

of surgery with specificity.

42.     When Martinez asked about implants  Shanthakumar angrily stated

" The VA  does not pay for dental implants."  Dr. Shanthakumar's statement was vehemently

false. Dr. Shanthakumar felt very comfortable talking down to Martinez. When Martinez

corrected Dr. Shanthakumar that the VA pays for implants for veterans with 100%

disability, and conveyed Martinez had worked for the VA as a Veterans benefit rater,  Dr.

Shanthakumar doubled down stating arrogantly, well,  I am not going to recommend it.

 In support:

43.     It is almost impossible to think Dr. Shanthakumar would jeopardize his business unless

there would be a big return for his cooperation in the conspiracy against Martinez and "no doubt"

money, for repeated business.   Defendants Jessica Clasen, and Kristen Roth only could have

given Dr. Shanthakumar that false information, as Dr. Shanthakumar's main business is dental

implants which he publicly advertises. In support (see  website https://wichitaperiodontists.com/

44.      Co-conspirator, Dr. Shanthakumar in a close relationship agreed to conspire with Jessica

Clasen, Kristen  Roth, and Dr. Elysée and support from Director Candance Ifabiyi with unlawful

intimidation tactics against Martinez by force, threats, and intimidating Martinez to act out so

that the VA  could commit Martinez as unstable, due to his PTSD disability. Such tactics were

forcing bone graft surgery and pulling two perfectly sound teeth without replacing the extracted

with dental implants making it difficult to chew food, in retaliation for Martinez so having filed

and attended court against Dr. Elysée and director Candance Ifabiyi pursuant to Case # 6:21-CV- 1029-JAR_KGG.

45.     **In support**, of a well-orchestrated conspiracy amongst defendants, co-conspirator, Dr. Santhkumar, during Martinez's consultation, arrogantly stated he talks to Dr. Elysée on the phone all the time.

46.     It is impossible to believe Dr. Elysée and Dr. Shanthakumar did not speak about Martinez, especially after Martinez sued Dr. Elysée chief of dental at the Wichita VA. Further VA Medical records confirmed phone conversations between Jessica Clasen with Dr. Shanthakumar's office establishes a lynchpin the defendants talked to each other and conspired to remove two perfectly sound teeth to permanently damage Martinez by not replacing the extractions with dental implants; (2) further, medical records from Dr. Shanthakumar do not support surgery.

47.     As a result of Dr. Shanthakumar, Dr. Elysée, Jessica, Clasen, and Kristen Roth's and director Candance Ifabiyi's conspirator campaign of intimidating and retaliatory tactics toward Martinez, Martinez sustained damages of : (1) intentional infliction of emotional distress, (2) increase of high blood pressure requiring higher doses of medication to include 100 mg of losartan, and 25 mg of Hydrochlorothiazide, (3) pain due to inflammation suffering requiring meloxicam, (4) panic and anxiety attacks, (5) extremely slurred speech, and ( 6) Martinez having to stop taking on clients and stopped seeking other business opportunities in his personal business because of the aggravation of his emotional distress brought on by the defendants. In support :

   a.     Dr. Elysée and Jessica knew Martinez had 100% PTSD as Martinez told him during Martinez's apology. VA medical records show Jessica Clasen has seen Martinez's medical record in 2019 when Jessica authorized treatment for his gums with Dr. Anderson, and knew Martinez was under the care of Dr. Brewer, a VA psychiatrist MD for more than 10 years.

   b.     Jessica Clasen and Kristen Roth knew exactly that dental implants are covered for veterans who had a 100% disability and knew exactly what they were doing

14

using Martinez's disability as a motive to retaliate against Martinez by intimidating tactics as payback.

c.      Jessica Clasen and Kristen Roth did not have discretionary authority as Community care employees to conspire and retaliate against Martinez for Martinez, so having attended court against Dr. Elysée, Director Ifabiyi, and Dr.Shanthakumar's, third party contractor for the VA;  (2)  The VA does not have policy guidelines for VA employees to utilize discretionary authority to intimidate VA patients.

(3) Jessica Clasen and Kristen Roth co- conspiracy of intimidation was extremely outrageous and knowingly taking advantage of Martinez's mental weakness of 100% PTSD.

d.      As a result of Jessica Clasen and Kristen Roth's outrageous conduct,  with co-conspirator Dr. Shanthakumar and Dr. Elysée, Martinez sustained prolonged exacerbation of intentional infliction of emotional distress directed at Martinez.

48.   In support, Martinez filed a separate cause of action against Dr. Shanthakumar for conduct of engaging in unconscionable acts and practice pursuant to K.S.A. 50-627(a), (b) (1,3,5,7))) ; case# 22- CV-554, filed March 31, 2022. (ref. 57)

49.   During all prior conversations with co-conspirators, Jessica, and Kristen, defendants to no surprise continued to intimidate Martinez by refusing to give their last names making it difficult for Martinez to adjudicate his FTCA claim. This was a well-thought-out plan with Dr. Elysée and co-conspirator Cathleen Phillips intimidating Martinez with tactics in a joint conspiracy to retaliate against Martinez for filing a Federal lawsuit, and so having attended under case # 6:21-CV-1029- JAR_KGG.

50.   Such willful action forced Martinez to go to the VA's HR department which recommended filing a freedom of information act with the VA to get Jessica, Kristen, and Cathleen's last name which Martinez did.

a). **In support,** HR at the Robert J. Dole Medical Center in Wichita Kansas can verify this event.

51.   A well-thought-out intimidation campaign continued. Jessica R. Clasen, RN

15

[threatened] economic damages by coerced pressed, pressuring, strong-armed, bullied, intimidating, and forcing, Martinez to comply with her demand that Martinez travel unreasonably over 200 miles to Salina to see Dr. Patrick Lucaci for the extraction of a tooth on May 27, 2022, at 2:00 pm, Referral # VA0020373544, by threatening to deprive Martinez of medical care by stating "the VA is not going to pay for any more medical treatment if Martinez fails to cooperate ".

52.   At the time Jessica R. Clasen made that threatening statement, Jessica knew that Dr. Provenzano was less than 5 miles from Martinez's home, worked part-time for the VA, and is an in-network provider for the past 5 years. Jessica R. Clasen knew she was retaliating against Martinez when she willfully intimidated Martinez to comply or else be denied treatment.

a. There is no VA discretionary guideline forcing Martinez to travel unnecessarily, and if Martinez did not comply; the VA has the authority to take Martinez's VA benefits away and therefore, Jessica was not working in her discretionary scope of employment but conspired with another co-conspirator to retaliate against Martinez by force and intimidation.

b. Jessica's force and intimidating tactics were outrageous and as a result of Jessica and Kristen Roth's outrageous conduct of intimidation caused Martinez's continuation of exacerbation of intentional emotional distress which was a-symptomatic and became symptomatic due to Jessica's outrageous threats and intimidation which caused Martinez's blood pressure to increase, causing headaches, body aches, knee and shoulder pain, panic, anxiety attacks and isolating himself from his family with the feeling of hopelessness.

53.   Martinez is not on Medicare and is using his government's health and dental benefits awarded to disabled veterans. Jessica's threat to Martinez with that leverage is outrageous. Jessica Clasen's conduct is one of the major factors why nearly 400,000 veterans have Committed suicide in the past 20 years under the care of the VA hospitals. ( ref.19)

54.   It is impossible for Jessica to deny, Jessica has referred Martinez to.
Dr. Provenzano before to have Martinez's teeth pulled. This was no mistake but a well thought-out-conscience decision and a strategy to intimidate Martinez as she was quite aware of

Martinez's PTSD and wanted Martinez to (act- out) so that the VA could label Martinez as a hostile patient and forever damage Martinez's future care within the VA hospital system nationwide.

55.    **In support**: Dr. Provenzano and Dr. Anderson, medical records are available for verification and support Jessica's unreasonable demands as a means of intimidation to cause Martinez's continuation of emotional distress. (ref. 50-54).

56..    On June 27, 2022, Martinez Subpoena Jessica Clasen, Cathleen M. Phillips, and Kristen Roth regarding a lawsuit pending under Martinez v. Shanthakumar case # 22 CV554 and to testify under oath regarding VA notes, they had entered and altered Martinez's medical records to portray Martinez as a racist against Dr. Elysée, Dr. Shanthakumar, director candace Ifabiyi and Dr. Lucaci. Such comments were damaging to Martinez's reputation and were designed to encourage other treating VA doctors to stay away from Martinez and to do the bare minimum treatment to punish Martinez for so having filed a lawsuit and attend court against medical doctors within the VA hospital pursuant to case # 6:21-CV-1029-JAR_KGG, filed January 29, 2021. (ref 40.-48, 51)

57.    A compromise with the DOJ Brain Vanorsby was agreed on not to pursue VA employee depositions at that time and VA records could not be released to Dr. Shanthakumar's defense team. (ref. 48).

58.    Further intimidation by means of retaliation Defendants conspired with Martinez's primary care doctor at the VA to say Martinez did not have high blood pressure and used manual blood pressure devices to circumvent the electronic standard devices used throughout the VA hospital which showed Martinez's blood pressure was over 160/82. Dr. Washburn subjectively read the manual device as normal. Dr. Washburn regardless of the reading of the electronic blood pressure device would not change Martinez's medication. Martinez's blood pressure remained high.

59).    As a result, of Dr. Washburn's actions, Martinez suffer unnecessary pain and suffering, for nearly 10 months resulting in high blood pressure and the exacerbation of emotional distress 24/7, panic attacks, pain in knees, and right shoulder, and slurred speech which resulted in Martinez's isolating himself from his family due to deep depression, giving all signs that Martinez

sustained a Transient Ischemic stroke.

59a.    **In support**, Martinez is now under the care of Dr. Hassan, a neurologist for testing at the Wichita VA medical center. (2) the VA Mental Health diagnosed Martinez with chronic depression on or about April 15, 2022, after the lawsuit under case # 6:21-CV-1029-JAR_KGG was filed against Dr. Elysée, dentist, and Director Candance Ifabiyi.

60.    On 5/24/2022 Martinez was eventually reinstated back to Dr. Anderson ( periodontist) who validated Martinez's blood pressure was too high for her to treat Martinez's bleeding gums and refuse to treat Martinez unless the blood pressure got under control.

61.    Dr. Washburn, at the VA hospital, had no other choice but to increase Martinez's blood pressure medication to 100mg of losartan, daily, and hydrochlorothiazide 25mg.

62.    Due to Martinez having so named Dr. Washburn in the lawsuit pursuant to case # 6:21-CV-1029-JAR_KGG, Dr. Washburn co-conspired willfully to intimidate Martinez by way of retaliating to get back at Martinez until Dr. Anderson ( periodontist) and MD outside the VA, refused to treat Martinez due to his high blood pressure. Dr. Anderson's report changed Dr. Washburn's intimidation tactics.

63.    Because Dr. Washburn, primary care physician, joined in the well-thought-out intimidation conspiracy against Martinez with other doctors and VA employees, the high blood pressure caused Martinez prolonged burning of the ears, headaches, and exacerbated Martinez's bleeding gum disease-causing unnecessary pain, and suffering, and exacerbating emotional distress due to Martinez's pre-existing PTSD that Dr. Washburn, VA primary care physician for Martinez, knew about it for the past 6 years.

64.    **In support,** mental health records from Dr. Brewer and Dr. Washburn's altered medical records and correspondents sent directly to VA director Candance Ifabiyi are available for review.

65.    It is impossible that there would not be a high degree to change Martinez's blood pressure medication if it were not for Dr. Anderson's refusal to treat Martinez due to his high blood pressure. Martinez did not name Dr. Washburn in the FTCA as she changed her ways timely, and is now not a named defendant unless Martinez motions to the court to include Dr.

Washburn,  since she was not named in the FTCA.  Martinez must first overcome the motion to dismiss first and foremost.

66.    On  Nov. 4, 2022, Jessica Clasen VA employee used the old playbook of intimidation and retaliation tactic she gave to co-conspirator Dr.  Shanthakumar, which brought him a lawsuit under 22CV554. (ref. par 40-48 ). And now, Jessica is retaliating against Martinez for having so filed a lawsuit against her co-conspirator, Dr. Shanthakumar at the implant Perio Center of Kansas. (ref. 40-48)

In support :

67.    In that conversation of willful intimidation, Martinez stated Martinez, was not interested in a surgical procedure for bone grafting until his gum disease was under control. Dr. Anderson  made no guarantee that bone grafting will resolve gum disease.

68.    Martinez further stated,  Martinez, is not interested in having tooth # 19 pulled without replacing the tooth with a dental implant, that tooth #19 was the main back tooth for chewing food. Martinez conveyed Martinez has a 100% disability rating for PTSD  and reference the VA website that confirms a 100% disability rating that provides veterans with "**any needed dental care**". https://www.va.gov/health-care/about-va-health-benefits/dental-care/ .  and  (Exhibit C)

69.     It is undisputed that  Martinez needs tooth #19 to chew food and to promote other healthy teeth to maintain their strength impacting the upper and lower teeth. ) Facts: Jessica Clasen denied any replacement of extracted teeth with dental implants. The first intimidating directive given by  Jessica: "the VA does not pay for dental implants".  The same pre-script talking points were stated by Dr. Shanthakumar (see par. 40-48).

69a.    Jessica  Clasen was not acting in her discretionary scope of employment making intimidating statement to Martinez openly that the "VA does not pay for implants" knowing her statement was false.

19

69b.    Jessica Clasen was not acting in her discretionary scope of employment making intimidating statements to Martinez that implants don't work for her reasoning for not authorizing dental implants to replace teeth that have to be extracted.

69c.    There are no VA employment policy guidelines that give Jessica discretionary authority to engage by force, intimidation, or threat against a VA patient ( Martinez ) for having so attended court against VA employees, and deprived either directly or indirectly, Martinez's rights under the equal protection of the law under 42 U.S.C § 1985 (2) (3).

70.    After Martinez again proved 100% disability rating does pay for dental implants for veterans, the secondary intimidating directive given by Jessica; well, dental implants don't work. Jessica Clasen has not responded to Martinez's letter request that she proves her statement.

71.    Intimidation: is a pre-thought consciousness in the mind before speaking and Jessica knew what she was stating is incorrect. Yet she continues to give false information under the protection of sovereign immunity afforded to government employees working in their scope of employment. Jessica Clasen is not working in her discretionary scope of employment giving false information on behalf of the Department of Veterans Affairs and under the authority of VA secretary, Denis Mc Donough.

72.    Such statements are outrageous and are willful misconduct to retaliate against Martinez for having so filed, and attended, as a party in court against defendants. Case # 6:21-CV-1029-JAR_KGG, and for same against Dr. Shanthakumar under 22-CV-554.

[**In support** that dental implants are needed to chew and support other healthy teeth] .

73.    Dr. Andersen will testify as Martinez's periodontist for the past 4 years and is an in-network Third-Party Contractor - periodontist with the Department of Veterans Affairs, and will verify in a court of law dental implants are needed to chew and support other healthy teeth by impacting with other teeth.

74.    Martinez submitted a three-page letter on Nov. 11, 2022, to the attention of Jessica

Clasen, and VA  Direct Candance Ifabiyi requesting legal data to back up Jessica's statement that "dental implants don't work, " which neither can prove. **In support,** the three-page letter is available for review during discovery.

75.      It is not possible that Doctor Anderson or any other licensed periodontist in Wichita Kansas, will never,  state dental implants are not needed to promote healthy teeth and aid in chewing food.

a.  Jessica Clasen knew what she was saying to Martinez about "dental implants don't work is false.

b. Jessica knew she could not back up her statement that " dental implants don't work".

c. Jessica knew she gave information to Dr. Shanthakumar stating  " VA  does not pay for dental implants",  was false,  and a third-party contractor,  Dr. Shanthakumar joined Jessica's conspiracy by conveying that to Martinez in a consultation which got him sued for unconscionable act and practice, K.S.A. 50-627 (a),(b) 1-7,  under case# 22-CV-554.  Dr. Shanthakumar's main business was installing implants ( website .ref. 43 )

d. Jessica knew she was retaliating against Martinez because Martinez sued  her co-conspirator Dr. Shanthakumar  and for subpoenaing  her to testify against  Dr. Shanthakumar by continuing  to intimidate Martinez  to intentionally inflict emotional distress on Martinez  as payback

e. Jessica knew Martinez was 100% disabled with PTSD  and knew veterans have committed suicide when provoked by VA employees. ( ref., 19, 53).

f. Jessica knew she could intimidate Martinez which would cause Martinez's high blood pressure to increase and cause bodily injury and extreme emotional distress because of Martinez's 100% PTSD.

g. Jessica knew what she was doing and that was to inflict as much emotional stress on Martinez for Martinez to follow other veterans who have committed suicide or to cause Martinez extremely emotional distress, simply because Martinez exercise his legal right to file a lawsuit and attended court against Dr. Elysée, Dr. Shanthakumar, director Candance Ifabiyi and subpoenaed Jessica Clasen and Kristen Roth as a witness against Dr. Shanthakumar which is extremely outrageous conduct and a violation of 42 U.S.C § 1985(2) (3).

76.    As a result of, defendant's outrageous conduct, Martinez continues to experience exacerbation of his pre-existing PTSD which was a-symptomatic and made symptomatic by Dr. Jean Elysée, Cathleen Phillips, Jessica Clasen, Kristen Roth, Dr, Shanthakumar, and Director Candance Ifabiyi outrageous conduct as stated in 1- 77 and that outrageous conduct caused intentional infliction of emotional distress and continues. Martinez fears the retaliation against Martinez will never stop. There is no other statute that fits precisely that will end the VA intimidating Martinez for exercising his legal rights under 42 U.S.C § 1985(2) (3) and ask the court to intervene.

## E.  LAW AND ANALYSIS

### 42 U.S. Code § 1985 - Conspiracy to interfere with civil rights
### Purpose and Provisions of 42 U.S.C. § 1985

77.    Section 1985 was enacted, among other things, to provide tools to ensure that The federal government is able to function effectively and guard against conspiracies to injure individuals exercising certain protected rights. Section 1985(2)-(3) of the statute, in relevant parts forbid conspiracies to interfere with a person so having attended . . . court, and forbids conspiracies to intimidate or retaliate against persons who have attended.

**(2) Obstructing justice; intimidating party, witness, or juror**

If two or more persons in any State or Territory conspire to deter, **by force, intimidation, or threat, any party** or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness **in his person or property on account of his having so attended** or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**(3) Depriving persons of rights or privileges**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may **have an action for the recovery of damages** occasioned by such injury or deprivation, against any one or more of the conspirators.

78.    Intimidation (a type of conduct often carried out through the use of speech) and threat a type of conduct nearly always carried out through the use of speech), and both Klan Act provisions (§§ 1985(2) and 1985(3)) additionally require proof of conspiracy—again, conduct effectuated through speech, using the mechanism of a conspiratorial agreement.

79.    Under 42 U.S. Code § 1985(2) (clause i). The statute provides a remedy in damages to anyone who is injured in his person or property or deprived of a federal right or privilege as a result of an act in furtherance of a conspiracy prohibited under any part of Section 1985. Under 42 U.S.C. 1985(3) (clause iii). 42 U.S.C. 1985(2) (clause i). That clause must be read in conjunction with the third and final clause of Section 1985(3), which provides the remedy:

*Haddle v. Garrison – No. 97-1472*

80.    The remedy clause becomes relevant only after a plaintiff establishes a violation of a right provided in one of the substantive clauses of Section 1985. Requiring an additional violation would be redundant. The historical context in which Congress enacted Section 1985 suggests that **Congress did not intend the remedy for violations of the statute to depend on state law.** ***Haddle v. Garrison – No. 97-1472.***

81.    Two sections of the statute, 42 U.S.C. § 1985(2) and (3), are implicated by Defendants' campaign against Martinez. Each of the two sections provides multiple means for establishing a violation.

The  first clause of 42 U.S.C. § 1985(2) prohibits conspiracies to injure a person on account of their having attended court :

> If two or more persons in any State or Territory conspire . . . **to injure such party or witness in his person or property on account of his having so attended** . . . in any court  (emphasis added).

Section 1985(3) provides:

> The party so **injured or deprived may have an action for the recovery of damages** occasioned by such injury or deprivation, against any one or more of the conspirators.

## COUNT I

(Conspiracy in Violation of 42 U.S.C. § 1985(2),(3))

82.    Plaintiff incorporates by reference the preceding paragraphs  1-81 as if fully set forth herein.  Martinez is a disabled veteran with 100%  PTSD due to an in-service military injury. (ref. 32a, 47a, 75f.).

83.    Defendants agreed on and conspired with each other and others with the shared purpose of retaliating against Martinez by force, intimidation, or threat, on account of Martinez of  having

so **attended. . . . in any** court against Dr. Elysée's and Director Candance Ifabiyi's, conduct, under Case # 6:21-CV-1029- JAR_KGG, to include co-conspirator, Dr. Shanthakumar under case # 22-CV-554. ( ref. 31,32,38,40,43, 44,49-53,66, 67, 69).

84,      Engaged in overt acts, community care manager Jessica Clasen along with Kristen Roth and Cathleen Phillips was a part of the conspiracy with Dr. Shanthakumar, at the Implant Perio Center of Kansas and Dr. Elysée to force, intimidate and threaten Martinez by way of retaliation to get Martinez to [act- out] to damage Martinez by inflicting extreme emotional distress and to send a clear message that a similar fate would await any other veteran who may file and so having **attended. . . in any court** against Dr. Elysée or VA director Candance Ifabiyi. (ref, 40-47).

85.     In addition, Jessica Clasen and Kristen M. Roth at community care retaliated against Martinez for having subpoenaed them as a witness in the lawsuit against Dr. Shanthakumar who is a third-party co-conspirator, case # 22CV554, and obstructed justice by force, intimidation and threat against Martinez for so having attended. . . court against co-conspirator Dr. Shanthakumar at Implant Perio Center of Kansas. (Ref. 33, 38, 40-48, 56).

86.     The purpose of the joint conspiracy by force, intimidation, or threat was (1) to protect Dr. Elysée's reputation and position as the newly appointed chief of dental and the reputation of newly appointed VA Director Candance Ifabiyi at the Wichita VA medical center. And, to intimidate by way of retaliating against Martinez as revenge and to punish Martinez for so having filed a lawsuit and **attend** court against Dr. Elysée and Director Candance Ifabiyi. (ref. 35).

87.     Overt acts taken by Defendants and their co-conspirators in furtherance of the conspiracy to intimidate retaliate against, and otherwise injure Martinez in violation of 42 U.S.C.§ 1985(2), (3) including, but not limited to : (1) holding phone meetings to coordinate strategy regarding discrediting Martinez's reputation as a disgruntled patient and intimidating Martinez by aggravating Martinez's PTSD so that Martinez would [act out] and be labeled as a hostile patient to persuade other doctors at the VA to offer Martinez the bare minimum treatment possible (ref.45,46); (2) preparing, issuing, and using talking points aimed at coordinating a false portrait

of Martinez's character by (3) altering Martinez's medical records to portray Martinez as a **racist** (ref. 56) ; (4) forcing Martinez to drive unreasonably 200 miles to Salina Kansas to have a tooth pulled, threatening economic harm if Martinez refused, the VA would not pay for any further medical treatment since Martinez failed to cooperate. (ref. 51, 56 ); (5) falsifying medical records to convince other doctors at the VA medical center to distrust Martinez, and Martinez was faking his medical conditions and high blood pressure (ref. 58); (6) wrongfully disseminating false information, to a third-party periodontist, that the VA doesn't pay for dental implants, knowing that information is false, to punish Martinez for his previous legal action against defendants (ref. 42,43); (7) intimidating Martinez intentionally to cause emotional distress by making false statements "dental implants don't work," knowing that statement could never be proven by the VA and intentionally as a means to trigger Martinez's reaction as hostile. (ref.70-74); (8) Willfully interfering and intimidating Martinez's doctor-patient relationship with false statements (ref. 56,); (9) overt acts of intimidating Martinez with false information to willfully intimidate, and aggravate Martinez to the point that Martinez will follow other veterans who have lost hope and have committed suicide that have 100% PTSD due to VA employees conduct, (ref. 19, 53, 75 e,g); (10) that outrageous conduct caused exacerbation of Martinez's emotional distress which was a-symptomatic made symptomatic due to defendant's overt morbid acts of conduct and caused increased high blood pressure requiring increased medication and causing extreme bodily pain and suffering due to increased [high] blood pressure and intentional infliction emotional distress. ( ref. 60, 75e,g, 19 ).

## DAMAGES

### Depriving persons of rights or privileges
### 42 U.S.C. § 1985(3)

89.     Neither Jessica Clasen nor the other conspirators and co-conspirators had any applicable privilege or legal authorization to make false and misleading statements; (2) by force, intimidation, or make threats or to deprive Martinez of his civil rights, or if they did, defendants abused such privilege and authorization without the fear of consequences.

26

90.     As a natural and foreseeable result of this conspiracy and the overt acts taken in furtherance, Martinez was injured in his person on account of having attended court under Case # 6:21-CV-1029- JAR_KGG,  and 22-CV-554.

91.     As a direct and proximate result of Defendant's overt acts, and those of their conspirators, Martinez has sustained significant, emotional, and reputational harm in the VA system, entitling Martinez to damages in the amount of  $250,000.00 or $342.465753 per day for pain and suffering and infliction of emotional distress.

92.     The conduct of the VA  government defendants and others to participate in targeting Martinez at all relevant times, their participation in the "schemed plan" to cause  Martinez severe emotional distress was intentional, willful, and malicious, and with full knowledge that their conduct was substantially certain to result in severe emotional distress and bodily harm to Martinez.

93.     Due to the VA  government defendants' actions, and failures to act, Martinez  suffered severe exacerbation of emotional distress and bodily harm as a result of defendant's participation in the above plan to inflict  extreme pain and suffering including, but not limited to severe exacerbation of his pre-existing depression due to being 100% disabled with PTSD  and affecting Martinez's immediate family has been isolated by Martinez's fear of the VA  trying to commit Martinez as unstable 24/7 for filing a lawsuit against the defendants and attending court. Defendant's action also causes extreme anxiety, loss of friendships, **inability to continue working in his profession**,  insomnia, burning ears, neck, back/shoulder pain, and nightmares, due to exacerbation of Martinez's 100% PTSD.

94.     The conduct of the  VA government defendants was so outrageous in character and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a **civilized society**. Reciting the facts in this matter to an average person

causes resentment toward all defendants and leads them to exclaim: "Outrageous!"

95.   The outrageous conduct of the VA government defendants constitutes intentional infliction of emotional distress / bodily harm and liability to Martinez for his injuries.

96.   Due to the emotional distress resulting from the illegal acts and failures to act (ref.34) directed at Martinez by the VA government defendants, Martinez suffered severe emotional distress and bodily harm as a result of the outrageous conduct by all of the VA defendants and third-party state co-conspirators.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   Declare that Defendants violated  42 U.S.C. § 1985(2) and (3),

(2)   Permanently enjoin Defendants from further violations of 42 U.S.C.1985(2),(3),

(3)   Award compensatory and/or consequential damages in an amount to be

of  $250,000.00 or $342.465753 per day for pain and suffering and infliction of emotional distress as a result of  Defendant's Unlawful conduct,

(4)   Award nominal damages in recognition of the violation of Martinez's civil rights.

(5)   Award Plaintiff's reasonable pro se fees and litigation costs, and

(6)    Rule defendants' discretionary authorization was outside their scope of employment or abused their discretionary authority and must be accountable.

(7)   Provide such other relief as the Court deems just and proper.

TRIAL BY JUDGE

Pursuant to Federal Rule of Civil Procedure 52, Plaintiff demands a trial by judge of all issues so triable.

TRIAL KANSAS CITY KANSAS

Date: Dec 19, 2022,                                    PLAINTIFF DANIEL A. MARTINEZ

By: _____
                                                          P.O. Box 8873
                                                          Wichita, Kansas 67208
                                                          P: 316 -789-4360
                                                          danarcadio1983@outlook.com

MARTINEZ reserves the right to amend his complaint to conform to newly discovered facts and to correct deficiencies to defend against failure to state a claim or venue.